# FRANK THOMPSON
*v.*
## DEPARTMENT OF REVENUE

Plaintiff Frank Thompson, appeared on his own behalf.

Glen V. Sorensen, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff rendered April 19, 1978.

CARLISLE B. ROBERTS, Judge.

Plaintiff appealed from defendant's Order No. VL 77-272, dated April 27, 1977, which sustained the Columbia County Assessor's computation of the adjustment tax required by ORS 321.750[1] to be assessed against plaintiff's forest land immediately following its classification under the Western Oregon Small Tract Optional Tax Act, ORS 321.705 to 321.765 (hereinafter cited as the Optional Tax Act). Plaintiff filed an application with the State Forester in 1973, requesting that his forest land be classified under the Optional Tax Act for property tax purposes. The State Forester inspected plaintiff's forest land, concluded that it was eligible for classification, determined the appropriate site classifications and certified his findings to the Columbia County Assessor. After receiving the State Forester's certification, the assessor computed the adjustment tax required by ORS 321.750.

Plaintiff appealed the assessor's computation of the adjustment tax to the Department of Revenue. In its Order No. VL 75-385, dated July 7, 1975, the Department of Revenue determined that, pursuant to ORS 321.765, only the State Board of Forestry could hear plaintiff's appeal. It, therefore, dismissed plaintiff's appeal for lack of jurisdiction. Plaintiff appealed the the defendant's dismissal of his appeal to this court. The defendant's demurrer to plaintiff's complaint was sustained on the grounds that the court had no jurisdiction of the subject matter and that the complaint failed to allege facts sufficient to state a cause of suit. Plaintiff thereupon appealed to the Oregon Supreme Court, which reversed this court's ruling and found that an appeal from the county assessor's adjustment tax computation should be made to the

[1]Unless otherwise stated, all citations to the Oregon Revised Statutes are taken from the 1973 Replacement Part, the law applicable when the assessor computed the adjustment tax at issue herein.

Department of Revenue, rather than to the State Board of Forestry. *Thompson v. Dept. of Rev.,* 276 Or 371, 554 P2d 510 (1976). The cause was remanded to the defendant Department of Revenue for further hearing and the issuance of a new order. The result of the remand was the issuance of the order presently under appeal.

The Optional Tax Act was enacted by the legislature in 1961 and was designed exclusively in aid of the holder of limited forest lands. (This is in contrast to the Western Oregon Ad Valorem Timber Tax Act, ORS 321.605 to 321.680, hereinafter cited as the Timber Tax Act, which was designed in aid of the larger holders of timber and forest land.) The Optional Tax Act was intended to encourage the owners of smaller tracts of timber to refrain from harvesting their timber before it had properly matured by reducing the tax burden during the growth period. Together with advantages, the act imposes certain restrictions and obligations on the owner. The obligation which is pertinent in this case is the adjustment tax required by ORS 321.750:

"(1) In cases of classification of forest land after the date five years following August 9, 1961, an adjustment tax as provided in this section shall be paid by the owner to the appropriate county tax collector within 30 days following issuance of the classification order by the State Forester. If payment is not made within the time limited, the State Forester shall withdraw the classification order.

"(2) The adjustment tax shall be an amount which, in each of the years specified in subsection (3) of this section, equals the amount by which the tax which would have been imposed under ORS 321.720 exceeds the amount of ad valorem tax actually paid on such forest land.

"(3) The computation provided in subsection (2) of this section shall apply to all years in which the timber on the forest land now being proposed to be classified was exempt from ad valorem taxation pursuant to ORS 321.605 to 321.680 [Timber Tax Act]. However, any

years previously considered in computing an adjustment tax under this section shall be excluded in computing any later adjustment tax.

"(4) The adjustment tax due under this section shall be computed by the appropriate county assessor or assessors at the time of issuance of a classification order subject to this section, and he shall certify the amount of the adjustment tax to the appropriate county tax collector. After the expiration of the period allowed for payment of the tax, the county tax collector shall report to the State Forester the payment or nonpayment of the tax."

Plaintiff alleges that the following actions taken by the county assessor when he computed the adjustment tax required by ORS 321.750 were improper: (1) the assessor computed the adjustment tax on the basis of all tax years beginning subsequent to August 9, 1961 (the effective date of the Optional Tax Act), rather than limiting his consideration to only those tax years beginning subsequent to August 9, 1966; (2) the assessor computed the adjustment tax separately for each of plaintiff's tax lots classified under the Optional Tax Act and failed to deduct the "negative" tax computed on one of the lots from the total tax computed on the other lots; (3) the assessor did not credit against the adjustment tax the harvest taxes paid by plaintiff pursuant to ORS 321.645 after some timber on the forest land being classified had been harvested; and (4) in computing the adjustment tax, the assessor did not consider excess property taxes paid by plaintiff in the past as a result of the county's erroneous overstatement of the acreage in some of plaintiff's forest land parcels.

■ In support of his first allegation of error, plaintiff relies on ORS 321.750(1). Plaintiff claims that ORS 321.750(1) limits the tax years that can be considered in computing the adjustment tax to those tax years beginning after August 9, 1966. The court cannot read any such limitation into ORS 321.750(1). Subsection (1) only defines those taxpayers who will be subject to the adjustment tax. The Optional Tax Act

became effective on August 9, 1961, and ORS 321.750(1) directs that only those taxpayers who, like plaintiff, chose to have their forest land classified under the Optional Tax Act more than five years after the effective date of the act shall be required to pay an adjustment tax.

The actual method of computing the adjustment tax is set out in ORS 321.750(2) and (3). In particular, subsection (3) provides that the computation "shall apply to all years in which the timber on the forest land now being * * * classified was exempt from ad valorem taxation pursuant to ORS 321.605 to 321.680. * * *" The Timber Tax Act, ORS 321.605 to 321.680, like the Optional Tax Act, was enacted in 1961 and became effective on August 9, 1961. The Timber Tax Act first partially exempted timber from ad valorem taxation in the 1962-1963 tax year, the first tax year beginning after August 9, 1961. Consequently, the county assessor acted properly when he computed the adjustment tax on plaintiff's forest land on the basis of all tax years beginning subsequent to August 9, 1961.

Plaintiff's second allegation of error stems from the assessor's computation of the adjustment tax on plaintiff's forest land in Assessor's Account No. 873-4-1-1. This account contained 11.08 acres of forest land, all of which was certified by the State Forester to be eligible for classification under the Optional Tax Act. ORS 321.750(2) provides that the adjustment tax shall be the amount by which the tax which would have been imposed on the land, if it had been classified under the Optional Tax Act, exceeds the ad valorem tax actually paid on such forest land during the applicable tax years (in this case, 1962 through 1973). The ad valorem tax plaintiff paid during those years on the 11.08 acres exceeded the amount of tax which he would have paid if the 11.08 acres had been taxed under the Optional Tax Act, resulting in a "negative" adjustment tax. The assessor determined that no adjustment tax was due on these 11.08 acres and he simply ignored the negative figure.

Plaintiff claims that, rather than ignore the negative figure, the assessor should have used it as an offset against the adjustment tax on plaintiff's forest land in other accounts. Essentially, what plaintiff is arguing is that the adjustment tax should be computed by totaling the tax that would have been paid on all of his forest land being classified as if it had been taxed under the Optional Tax Act, regardless of how many accounts are involved, and subtracting from that figure the ad valorem tax actually paid on all his land being classified, rather than computing the adjustment tax separately for each individual account.

An examination of ORS 321.750(2) supports plaintiff's argument. Subsection (2) provides "[t]he adjustment tax shall be an amount which, * * * equals the amount by which the tax which would have been imposed under ORS 321.720 exceeds the amount of ad valorem tax actually paid *on such forest land.*" (Emphasis supplied.) The emphasized portion of the statute refers to all the forest land owned by the taxpayer which has been certified by the State Forester and is being classified under the Optional Tax Act.

■ It appears to the court that the statute contemplates that the adjustment tax will be computed on the forest land being classified as a whole, rather than being computed separately for each individual assessor's account. This conclusion is bolstered by the legislative intent, expressed in ORS 321.710, to provide tax relief to the owners of smaller tracts of timber and to encourage those owners to seek the benefits of the Optional Tax Act, which requires them to classify all their eligible forest land. Consequently, the assessor erred when he computed Mr. Thompson's adjustment tax separately for each account and ignored the negative figure computed for Assessor's Account No. 873-4-1-1.[2]

[2] The use of the Optional Tax Act is offered only to those "owners having a total ownership of forest land in western Oregon not in excess of 1,000 acres * * *", including forest land in any of the Western Oregon counties. ORS 321.725(2) and 321.705(2). However, the problem of allocation among several counties is not present in this suit.

■ Plaintiff next alleges that the county assessor's calculation of the adjustment tax is improper because the county assessor did not allow a credit for harvest taxes plaintiff had paid on timber harvested from some of the forest land being classified. Plaintiff argues that the harvest taxes are part of the ad valorem tax paid on the forest land and should, therefore, be subtracted from the amount of tax which would have been paid if the forest land had been taxed under the Optional Tax Act. There is no basis for plaintiff's claim. The harvest taxes are a tax upon the timber, not the forest land, and should not be considered when computing the adjustment tax on the forest land alone. ORS 321.750 contains no provision allowing the harvest taxes to be credited against the adjustment tax.

■ A fourth error on the part of the assessor was alleged by the plaintiff respecting the assessor's computation of the adjustment tax. This stems from mapping errors made by the assessor's staff which resulted in overstating the acreage included in three of plaintiff's parcels of forest land. Since the assessor valued the land on a per acre basis, the value of each of these three parcels had been overstated on prior assessment rolls. The overvaluation of the parcels naturally resulted in plaintiff being required to pay a greater amount of property tax on each parcel than would have been paid if the acreages and the values had been properly stated. In computing the adjustment tax for each of these parcels, the assessor used the ad valorem tax that would have been paid on each parcel if the acreages and the values had been correct, rather than the actual ad valorem tax paid, as directed by ORS 321.750(2). The language in ORS 321.750(2) is very clear. It was improper for the assessor to use anything other than the "ad valorem tax actually paid on such forest land."

Since àll of the land in Assessor's Account Nos. 1263-3 and 362-4 was certified by the State Forester as eligible for classification under the Optional Tax Act,

the assessor need only refer to his records to determine the ad valorem tax actually paid on the forest land in these two accounts. However, Assessor's Account Nos. 2574-2 and 2574-1-1 require a more complicated calculation. As a result of the mapping error, the assessor had originally included 362 acres in these two accounts. After the error was discovered, it was determined that there were only 332.8 acres in these two accounts. Of these 332.8 acres, the State Forester determined that 256.8 acres were eligible for classification under the Optional Tax Act. In order to determine the ad valorem tax actually paid on these 256.8 acres, the assessor shall multiply the ad valorem tax actually paid on the land in these two accounts in the applicable years times a fraction, the numerator of which is the number of acres certified by the State Forester (256.8) and the denominator of which is the total number of acres actually in the two accounts (332.8).

The defendant's Order No. VL 77-272, dated April 27, 1977, is set aside and held for naught and the County Assessor and Tax Collector of Columbia County shall recompute the adjustment tax on plaintiff's forest land as necessary to conform with this decision. If taxes have been paid by the plaintiff in excess of those required by this decision, the excess, with statutory interest thereon, shall be remitted to the plaintiff by the Board of County Commissioners of Columbia County, Oregon, pursuant to ORS 311.806 and 311.812 (1977 Replacement Part).

Plaintiff is awarded his statutory costs and disbursements.